UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK DEYOUNG,

      Plaintiff,

                                         CASE No. 1:20-CV-549

v.

                                         HON. ROBERT J. JONKER

ROYCE WEAR, LLC, et al.,

      Defendants.

_____/

## OPINION AND ORDER

Plaintiff Derek DeYoung initiated this action against the defendants on June 16, 2020, alleging copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; false designation of origin under the Lanham Act, 15 U.S.C. § 1125; and several state law theories. Summons were returned executed on twenty-one defendants dated October 8, 2020.[1]  (ECF 23). Thereafter DeYoung voluntarily dismissed two Defendants: Royce Ware, LLC and Tien Dung Do. (ECF Nos. 25 & 26).  After the remaining nineteen Defendants failed to answer or otherwise respond to the Complaint, the Clerk of Court entered default against them on October 22, 2020. (ECF No. 28).  On December 4, 2020, DeYoung moved for a default judgment seeking, among other things, statutory maximum damages under the Copyright Act based on thirty-three asserted statutory violations.

---

[1] One additional Defendant, William Harding, was dismissed on Plaintiff's motion.  (ECF No. 34). Plaintiff's First Amended Complaint also named ten John Doe defendants.  (ECF No. 15).  Plaintiff does not appear to be pursuing claims against these defendants.

By Order dated January 22, 2021, the Court required DeYoung to submit more information in support of the requested damages and fees.  The Court noted that the mere entry of default judgment does not entitle a prevailing plaintiff to a statutory maximum award under the Copyright Act.  DeYoung has responded with some information, but in the main he insists that the Court should order the statutory maximum of nearly $5,000,000 in copyright damages based on Defendants' willful infringement of his protected work, established by virtue of their default.  The Court disagrees.  Proof of willfulness, whether established through trial or on default judgment, does not automatically entitle a copyright holder the statutory maximum.  To the contrary, a reviewing court has broad discretion to determine an appropriate damages figure in each case.  The Court finds no basis to award the maximum amount sought here, in what appears to be a mine run case of copyright infringement by individuals located overseas.

## BACKGROUND

DeYoung is an artist residing in Traverse City, Michigan.  (First. Am. Compl. ¶ 9, ECF No. 15, PageID.858).  His artistic works focus on the sport of fly fishing, and his designs are unique for their use of vibrant colors.  (*Id.* at ¶ 10).  DeYoung controls the copyright registration to these works, twenty-one of which are listed in his Complaint.[2]  (*Id.* at ¶ 12).  DeYoung also is the owner of a trademark, which he uses as part of his online retail store services.  (*Id.* at ¶¶ 13-15).  DeYoung licenses his art to manufacturers and retailers of sporting equipment and accessories.  (*Id.* at ¶ 11).

Defendants are overseas retailers of clothing goods, including t-shirts and sweatshirts.  (*Id.* at ¶ 19).  The individual defendants own and operate ecommerce retail stores that sell clothing

---

[2] Some of these listed copyrights appear to have the same copyright registration numbers (*compare* First Am. Compl ¶ 12(e) *with* First. Am. Compl. ¶ 12(h)), and in his later motion for default judgment, DeYoung states that seventeen copyrighted works are at issue. (ECF No. 35, PageID.1018).  As discussed below, however, DeYoung alleges thirty-three statutory violations.

products bearing the unlicensed and infringing images of various artists, including DeYoung.  (*Id.* at ¶ 22).  Defendants upload images stolen from DeYoung's online store on Amazon.com to their own stores.  There, Defendants advertise their counterfeit products to residents of the United States.  (*Id.* at ¶¶ 22-23).  When a customer purchases a counterfeit product, Defendants will either ship the product on low-quality clothing or ship nothing at all.  (*Id.* at ¶ 24).

In April 2020, DeYoung discovered Defendants' clothing products bearing his unlicensed artwork on social media.  (*Id.* at ¶ 25).  He initiated this lawsuit appropriately two months later.  (ECF No. 1).  Following the Clerk's entry of default, DeYoung filed the pending motion for default judgment.

## ANALYSIS

Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true.  *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief"); *see also Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its [ ] claims must be considered established as a matter of law.").  Thus, by virtue of the Clerk's entry of a default against the defendants in this matter, DeYoung has conclusively established that Defendants are liable on all six counts of the First Amended Complaint.  (ECF No. 15).

The mere fact of Defendants' liability, however, does not automatically entitle DeYoung to a default judgment.  Even after entry of default, the decision to grant a default judgment is within the Court's discretion.  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *see also* 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2685 (3d ed. 1998) ("This element of

3

discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)").  In determining whether to enter a default judgment, courts typically consider factors such as:

> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt.

10A WRIGHT ET AL., at § 1685.  These factors all point toward granting DeYoung's motion for a default judgment in this case.

The only remaining question, then, is the amount of the judgment.  *See Clever Covers, Inc. v. Southwest Florida Storm Defense, LLC*, 554 F. Supp. 2d 1303, 1309 (M.D. Fla. 2008) ("Once liability is established, the district court must also assess damages.").  "The traditional remedies for violations of the Copyright Act include injunctive relief, impoundment and destruction of infringing articles, money damages, and costs and fees." *Id.* (citing 17 U.S.C. §§ 502-505).  Similar remedies are provided for under the Lanham Act for instances of trademark infringement.  *See* 15 U.S.C. § 1125.  In his motion, DeYoung seeks $4,950,000 in statutory damages—the statutory maximum based on the number of copyrights involved; $380,000 in Lanham Act damages; $32,347 in attorneys fees; $400 in costs; and an order permanently enjoining Defendants from reproducing his copyrighted works.

### 1.  Copyright Damages

The owner of a copyright may collect either actual damages or statutory damages from an infringer.  17 U.S.C. § 504(a).  In the First Amended Complaint, DeYoung notified Defendants that he might pursue either actual damages or statutory damages.  (First. Am. Compl. ¶ 43, ECF

4

No. 15, PageID.865).  DeYoung has since chosen to seek statutory damages of $4,950,000, which is the maximum statutory award available in cases involving the number of copyrights alleged.  17 U.S.C. § 504(c)(2).  In the absence of willfulness, the maximum statutory damages for infringing a single copyright are $30,000.  *Id.* at § 504(c)(1).  DeYoung contends that a heightened $150,000 award is appropriate because Defendants willfully infringed his copyright.  (ECF No. 35, PageID.1033-1034).

### A. *Willfulness and Number of Copyrights*

In arguing for an award of $4,950,000 in statutory copyright damages, DeYoung seeks to multiply the statutory maximum provided for willful violations ($150,000) by the number of copyrights infringed by the defendants (thirty-three).  The Court begins its analysis by addressing these topline numbers.

To recover the statutory maximum of $150,000 per copyright DeYoung must first prove that Defendants willfully infringed his copyrights.  17 U.S.C. § 504(c)(2) ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.").  There are factual allegations in the First Amended Complaint— which the Court must now accept as true—that would support a finding that Defendants willfully infringed DeYoung's copyrights.  (First Am. Compl. ¶ 23 ("Defendants steal the artwork of popular American brands and artists like DeYoung . . . and then advertise their counterfeit products directly to United States residents[.]")).  The Court accepts as true these allegations and determines that an increase of the range of statutory damages, up to $150,000, is available in this case.  17 U.S.C. 504(c)(2).  But, as expanded upon below, this does not mean that the maximum award is appropriate here.

5

Turning to the number of copyrights infringed, DeYoung's motion alleges infringement of seventeen copyrights.  (ECF No. 35, PageID.1018).  His damages chart, however, asserts thirty-three copyrights infringed.  DeYoung explains the difference by noting he is seeking damages per work infringed by each of the nineteen defendants as determined by the number of infringing images on each web domain controlled by one or more Defendants.  Some Defendants, therefore, are independently liable for infringing the same copyright.  And where more than one Defendant is responsible for the same website, DeYoung seeks to hold those defendants jointly and severally liable.  (ECF No. 35, PageID.1034-1035).   Section 504(c)(1) provides that the "copyright owner may elect . . . an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable joints and severally[.]"  17 U.S.C. § 504(c)(1).  The provision "move[s] the statutory damages inquiry from focusing on the number of infringements to focusing on the number of works that were infringed."  *Clever Factory, Inc. v. Kingsbridge Intern., Inc.*, No. 3:11-1187, 2014 WL 2711986, at *1 (M.D. Tenn. June 16, 2014) (emphasis removed).

That said, section 504(c)(1) "can be difficult to apply if multiple infringers and multiple infringements are involved."  *Id.* at *2.  The "prevailing interpretation . . . is that, regardless of the number of infringements involved, statutory damages are to be awarded based upon only the number of protected works that are infringed *unless other infringers are only individually liable for a particular infringement.*"  *Id.* (emphasis added).  In other words, "[w]hen a plaintiff in a copyright suit elects statutory damages, the damages are calculated based on the number of copyrighted works and the number of infringers, not the number of incidents of infringement."  *Clever Covers, Inc.*, 554 F. Supp. 2d at 1310 (citing *Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 183 (D. Mass 2007)).  So, "if a plaintiff proves that *one* defendant committed *five*

separate infringements of *one* copyrighted work, that plaintiff is entitled to only one award of statutory damages . . . . And if a plaintiff proves that *two* different defendants each committed *five* separate infringements of *five* different works, the plaintiff is entitled to ten awards, not fifty." *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-144 (5th Cir. 1992)).

Commentators have explained damages awards in cases of multiple infringers and multiple infringements using the following hypothetical:

> Suppose, for example, a single complaint alleges infringements of the public performance right in a motion picture against A, B, and C, each of whom owns and operates her own motion picture theater, and each of whom, without authority, publicly performed plaintiff's motion picture. If A, B, and C have no relationship with one another, there is no joint and several liability as between them, so that each is liable for at least a minimum of statutory damage award. Suppose, further, that D, without authority, distributed Plaintiff's motion picture to A, B, and C. Although A, B, and C are not jointly or severally liable with the other, D will be jointly and severally liable with each of the others. Therefore, three sets of statutory damages may be awarded, as to each of which D will be jointly liable for at least the minimum of $750.

4 NIMMER ON COPYRIGHTS § 14.04[E][2][d][i] (2019).

DeYoung's damages chart is in line with the Nimmer hypothetical. DeYoung charts out each individual Defendant that operates a listed domain and the number of copyrights that the domain infringes. Where there are two Defendants named in connection with the same domain, DeYoung asks the Court to hold those Defendants jointly and severally liable for the number of copyrights that are infringed on that domain. All told, this amounts to thirty-three asserted statutory violations. The Court accepts, for purposes of default judgment, DeYoung's contention of thirty-three statutory violations.[3]

---

[3] The Court acknowledges the Nimmer hypothetical has been criticized in "situations involving large numbers of infringements." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 313, 318 (S.D.N.Y. 2011) (rejecting a plaintiff's theory that would amount to trillions of dollars in

## B.  The Statutory Maximum is Not Automatic

Having established willfulness and thirty-three statutory violations by nature of the defendants' default, DeYoung seeks the maximum statutory award possible based on the $150,000 statutory ceiling multiplied by the thirty-three violations.    While DeYoung lists some considerations in his supplemental brief as to why a maximum statutory amount ought to be awarded here, the gist of DeYoung's theory is that the maximum statutory award is appropriate based on his pleadings, which through Defendants' default, establish both infringement and willfulness.  That simply is not correct.

"Merely proving willfulness does not automatically entitle a copyright holder to the statutory maximum.  The Court retains broad discretion to determine an appropriate damages figure in each case."  *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013) (citing 17 U.S.C. § 504(c)(2); *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 578 (6th Cir. 2007)).  "The $150,000 per-work maximum that the Copyright Act provides in cases

---

statutory damages).  Yet courts have declined to create a mass marketing exception to the analysis. *Friedman v. Life Nation Merchandise*, 833 F.3d 1180, 1191 (9th Cir. 2016).  *Friedman* involved a case where a defendant distributed one copyrighted t-shirt to twenty-seven retailers, another to forty-four retailers, and a calendar to thirty-three retailers.  The plaintiff sought an award based on one hundred and four separate statutory damage awards.  The Ninth Circuit concluded the plaintiff could not, however, recover against the over one hundred "downstream" infringers, because the plaintiff did not name those infringers as defendants.  *Id.* at 1191.  In a more recent decision, the Ninth Circuit has also found the Nimmer hypothetical inapplicable in "upstream" and "downstream" situations where one infringer is jointly and severally liable with all the other infringers, but the other infringers are not completely jointly and severally liable with each other. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir. 2021).  At least on the default judgment record in this case, however, this is not a case of downstream infringement, and DeYoung claims that the individual defendants while acting in concert, are each individually liable for the infringement of the work displayed on the ecommerce store they control.  Given that the Nimmer hypothetical's "rationale creates the incentive for future plaintiffs to add hundreds of co-defendants to the pleadings . . . it remains to be seen whether this case remains the last word on the subject." 4 NIMMER ON COPYRIGHTS § 14.04[E][2][d][i] (2019).  The Court is satisfied, however, that this case is not the time or place to resolve the matter and is satisfied that DeYoung may proceed on a theory of thirty-three statutory violations on this record.

of willful infringement is simply a possibility, not an assurance." *Howarth v. FORM BIB LLC*, Case No. 18-CV-7047 (JPO)(SN), 2020 WL 3441030 (S.D.N.Y. May 11, 2020) *report and rec. adopted Howarth v. FORM BIB LLC*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020) (internal quotation marks and citation omitted); *Clever Covers, Inc.*, 554 F. Supp. 2d at 1312 ("Plaintiff is not automatically entitled to the maximum amount of statutory damages simply because it has shown the . . . Defendants acted willfully.").  Even "[i]n the default context, it is . . . incumbent upon the plaintiff to submit a record sufficient to support the amount of statutory damages that he is seeking," but "allowance must be made for the fact that the defendant's failure to appear limits that which plaintiff can show." *Seelie Original Media Grp., LLC*, No. 19-CV-5643, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13, 2020).  In awarding damages, a trial court is tasked with doing "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum.  Within these limitations the court's discretion and sense of justice are controlling[.]" *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232 (1952) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100, 106-07 (1919)).

Courts have noted that "statutory damages are particularly appropriate in a case . . . in which [a] defendant has failed to mount any defense or to participate in discovery[.]" *Jackson v. Sturkie*, 225 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).  And "[b]ecause awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by the defendant." *L.A. News Serv. v. Reuters Television Intern. Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (internal citation and quotation marks omitted).  Still, there must be

some tie to economic reality.  "'Statutory damages are not intended to provide a plaintiff with a windfall recovery'; they should bear some relationship to the actual damages suffered."  *Clever Covers, Inc.*, 554 F. Supp. 2d at 1313 (quoting *Peer Int'l Corp. v. Luna Records*, 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995)).  So courts have rejected a plaintiff's damages theory in cases where, for example, the plaintiff seeks to recover over one hundred times its profits.  *Desire, LLC*, 986 F.3d at 1271; *but c.f. Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, at 587-88 (6th Cir. 2007) (finding a statutory award of $31,000 that was forty-four times the plaintiff's actual damages did not violate defendant's due process rights).

A review of a selection of cases demonstrates that reviewing courts often award amounts far less than the statutory maximum.  *See Coleman v. Payne*, 698 F. Supp. 704 (W.D. Mich. 1988) (collecting cases and awarding $5,000 per willful infringement where defendant radio station aired ten unauthorized musical compositions and Copyright Act at the time provided for a maximum of $50,000 for willful infringement); *Engel v. Wild Oats, Inc.*, 644 F. Supp. 1089 (S.D.N.Y. 1986) (awarding owner of copyrighted image $20,000 for defendant t-shirt manufacturer's willful infringement, below the statutory maximum); *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200 (W.D. Wash. 2014) (court awarded authors of children's books $50,000 per copyright, rather than the requested $150,000, against defendant book publisher in breach of publishing agreement); *Howart v. FORM BIB LLC*, 2020 WL 3441030 (recommending award of $16,770 per protected work, rather than requested statutory maximum on default judgment where the plaintiff's copyrighted photographs were copied onto defendants website); *Konad Co., OMG Marketing Ltd.*, Case No. CV 19-02394 PA (Ex), 2019 WL 8065855 (C.D. Cal. Oct. 8, 2019) (where defendant infringed on the plaintiff's artwork for nail-imprinting kits, court found request for statutory maximum on default judgment motion "excessive" and awarded $5,000 per infringement); *Star*

*Fabrics Inc. v. Karma*, Case No. 2:17-cv-03693-SVW-E, 2017 WL 6513650 (C.D. Cal. Dec. 19, 2017) (Plaintiff textile company holding copyrights to two-dimensional artwork sought to recover $30,000 in statutory damages in default judgment); *Lifted Research Group, Inc. v. Behdad, Inc.*, Case No. 08-390 (CKK), 2010 WL 2662277, at *5 (D.D.C. June 30, 2010) (awarding clothing company plaintiff the requested $30,000 in statutory damages); *Clever Covers, Inc.*, 554 F. Supp. 2d at 1313 (awarding $31,000 in statutory damages, rather than requested statutory maximum, for willful infringement of images on the plaintiff's website). All these cases, after weighing the various considerations, have determined an award far below the permissible statutory maximum was appropriate.

True, some courts have awarded the statutory maximum. But these are generally reserved for those cases involving "egregious" misconduct. For example, in *Warner Bros. Entertainment, Inc v. Caridi*, the plaintiff owned copyrights for the two motion pictures that were infringed by the defendant. The plaintiff had provided copies of the movies to the defendant licensee for movie award evaluation purposes only. The licensee, however, transmitted the copies to others for uploading to the internet. On default judgment, the reviewing court found the conduct at issue was "particularly egregious" and awarded the requested statutory maximum of $150,000 per work. *Warner Bros. Entertainment, Inc.*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004). In *Getty Images (U.S.)*, the plaintiff owned images of several dogs and cats. The defendants were a husband and wife who ran a website design company from their home, and in particular designed websites for veterinarian offices. Getty alleged that the defendants used the unlicensed images of its copyrighted works as part of their website designs. Getty sued the defendants seeking, among other things, $300,000 in statutory damages for the willful infringement of two of its images. The reviewing court found the request warranted on the default judgment record. It noted there was

11

evidence that the defendants had profited over $1,000,000 in the websites they had designed, and that $21,794.00 of that was directly attributable to five websites that posted the two images at issue.  Citing principles of deterrence, and the public interest in maintaining the integrity of the copyright laws, the court found that the maximum statutory award was appropriate.  *Getty Images (U.S.), Inc. v. Virtual Clinics*, *C13-0626JLR*, 2014 WL 1116775 (W.D. Wash. Mar. 20, 2014).

The Court finds these case to be distinguishable, and not persuasive in any event.  In both cases there was more evidence of the defendants' business scheme—for example, in *Getty* over $1,000,000 in total business and $21,794 in revenue directly attributable to the infringing websites—than is present here.  Moreover, while deterrence is certainly a factor that may justify an award above the plaintiff's actual damages, the $300,000 the court ordered in *Getty* is nearly sixty-five times the $4,655.00 in revenue and licensing costs Getty estimated it lost due to the defendants' infringement, which at a minimum raises due process questions.  *C.f. Desire, LLC*, 986 F.3d at 1269-1270; *Zomba Enterprises*, 491 F.3d at 586-587.

Courts typically find, however, that statutory damages between two and five times the license fees are sufficient to compensate copyright holders and deter future infringement.  *See, e.g., Nat'l Photo Grp., LLC v. Pier Corp.*, No. SACV131165DOCJPRX, 2014 WL 12576641, at *4 (C.D. Cal. Mar. 10, 2014) (collecting cases and noting that "[b]ecause statutory damages are available to compensate copyright holder and deter infringement, courts typically award two to three times the license fees."); *see also Design Pics Inc. v. PBH Networks, Inc.*, Case No. 20-cv-1096 (MKB) (JO), 2021 WL 74088 (E.D.N.Y. Jan. 8, 2021) ("Where infringement is willful but not 'truly egregious,' courts . . . frequently award statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); *Broadcast Music, Inc. v. LPGPS, Inc*, Case No. 4:02-cv-200, ECF No. 10 (W.D. Mich. Jan. 28, 2003) (Quist, J.) (approving

12

of an award of three times the amount the plaintiff would have received in music licensing fees); *Coleman v. Payne*, 698 F. Supp. 704 (W.D. Mich. 1988) (citing *Keca Music, Inc. v. Johnson*, No. 5-78-74 (N.D. Tex. June 18, 1979) which awarded three times the license fee).  The Court finds this line of authority persuasively distinguishes those cases awarding the statutory maximum.

For all these reasons, then, the Court is satisfied that the maximum award requested here—$4,950,000 based on thirty-three violations—is not available to DeYoung as of right simply due to the Defendants' default.

### C.   Copyright Damages

The Court must still determine what an appropriate and just award of copyright damages is between the statutory minimum of $750 and the statutory maximum of $150,000 for willful infringement.  DeYoung provides a succinct argument in support of the request: Willfulness has been established by virtue of Defendants' default, he says, and the maximum award is appropriate because Defendants have attempted to continue this infringement, even after receiving notice of the lawsuit.  (ECF No. 35, PageID.1034).  DeYoung further points out Defendants target U.S. consumers with counterfeit goods of poor quality, which damages his reputation and customer good will.  In a supplemental brief, DeYoung adds that his works license in excess of $100,000 and his sales of clothing through his own ecommerce store on Amazon.com for the 2020 fiscal year were down twelve and twenty percent as compared to the two previous fiscal years.[4]  (ECF No. 37, PageID.1451).  For the reasons that follow, the Court determines that an award of $31,000

---

[4] DeYoung seeks leave to file these two license agreements under seal (ECF No. 38).  Judicial proceedings are presumptively public and the Court would not ordinarily find good cause for sealing just from the potential competitive risk from expired agreements.  As expanded on below, the Court does not view these license agreements as adding much to the analysis, and given there is no Defendant that appeared in this case, the Court grants the motion to seal.

per violation, for a total award of $1,023,000 (rather than the $4,950,000 requested) is the appropriate balance of the relevant considerations.

In exercising the discretion afforded to the reviewing court, courts typically consider factors such as:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *see also Broadcast Music, Inc., supra* (observing many of the same factors). Other factors include the "strong public interest in ensuring the integrity of copyright laws." *Getty Images (U.S.), Inc.*, 2014 WL 1116775, at *2.

Applying these factors can be difficult in the default judgment context. Because no discovery occurred, there is no evidence about the expenses saved or the profits reaped by Defendants. Other factors can be considered, including Defendant's willfulness (the first factors), and Defendant's conduct in failing to participate in this case (the fifth and sixth factors), the need for deterrence (the fourth factor), and the public interest. These factors may well justify an increased award; but without some concrete starting point, these factors are difficult to monetize and compare with economic reality. And there is little in the record to assist the Court in arriving at that starting point. Indeed, the record contains scant details. For example, DeYoung's business manager says sales in 2020 were down twelve percent when compared to the 2019 fiscal year and down twenty percent when compared to the year before that, suggesting that DeYoung's revenues have been negatively impacted by Defendant's infringement. That is certainly a reasonable, perhaps the most reasonable, reading. But that statement has little use without some firm number

14

by which the percentage reduction could be quantified.  Even with those numbers, the Court likely could not readily discern how much, if any, of the decline of DeYoung's sales were due to Defendants' infringement.  There was, for example, an ongoing global pandemic throughout 2020.

The license agreement could in theory provide a meaningful basis for an award.  As indicated above "[t]o achieve [the purposes of the statute detailed in *Bryant*], courts often impose as statutory damages a multiple of the applicable licensing fee a defendant would have paid but for the infringement."  *Howarth v. FORM BIB LLC*, 2020 WL 3441030, at *3 (citing *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 356 (S.D.N.Y. 2017)).  But that's easier said than done here.  One of the license agreements DeYoung provides relates to an agreement to use DeYoung's protected images on non-clothing products.  Another provides a royalty formula per product sold.  But there is no information with respect to the amount of product volume that is potentially involved in this case.  The licenses provided do not create a solid basis for assessing the economic reasonableness of the award.  About the only concrete market information the Court has been able to glean is that DeYoung sells t-shirts on his Amazon.com webpage for about $25.00 each.  Even that is not especially helpful here because the record includes no data on total sales and volume.

The Court, then, looks to the cases discussed above to determine an appropriate award. While courts have come to different conclusions, several courts—including those involving images taken from webpages—have found that an award of $30,000 or $31,0000 was an appropriate balance of the statutory considerations.  S*ee Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, at 587-88 (6th Cir. 2007); *Lifted Research Group, Inc. v. Behdad, Inc.*, Case No. 08-390 (CKK), 2010 WL 2662277, at *5 (D.D.C. June 30, 2010) (awarding clothing company plaintiff the requested $30,000 in statutory damages); *Clever Covers, Inc.*, 554 F. Supp.

2d at 1313 (awarding $31,000 in statutory damages, rather than requested statutory maximum, for willful infringement of images on the plaintiff's website). This is hardly a conservative figure. Indeed, this is almost twice what one court found appropriate in a case where images were uploaded onto infringing websites. In *Howarth*, the Court found an award of $16,770 was appropriate even though willfulness, through the defendant's default, had been established. *Howarth*, 2020 WL 3441030, at *3. This was five times the amount for which the plaintiff would have licensed the work. The Court is satisfied that the allegations in DeYoung's complaint demonstrate that a larger sum is required here to account for the commercial use of the copyrighted images on counterfeit products. An award of $31,000 per violation, for a total award of $1,023,000 is an appropriate amount accounting for all the statutory considerations.[5]

### 2. Trademark Damages

Plaintiff also seeks an award of $20,000 per Defendant in statutory damages for trademark damages. In assessing damages under the Lanham Act:

> the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).

In evaluating damages "the plaintiff is held to a lower standard of proof in ascertaining the exact amount of damages, and once the existence of damages has been shown, all that an award

---

[5] The Court observes this amount is within the scope of two to five times the amount of a license of one of DeYoung's protected images, using the top line numbers in the agreement provided at ECF No. 39.

requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 342 (6th Cir. 2010) (cleaned up). Courts weigh a number of factors in exercising their discretion under the act:

> the courts have weighed the equities of disputes on a case-by-case basis, considering a wide range of factors including, inter alia, the defendant's intent to deceive, whether sales were diverted, the adequacy of other remedies, any unreasonable delay by the plaintiff in asserting its rights, the public interest in making the misconduct unprofitable, and "palming off," i.e., whether the defendant used its infringement of the plaintiff's mark to sell its own products to the public through misrepresentation.

*La Quinta Corp.*, 603 F.3d at 343 (collecting cases).

DeYoung suggests $20,000 per defendant is an appropriate award after accounting for the above factors. DeYoung points to his two license agreements, and suggests that $20,000 is the minimum amount Plaintiff would accept for a license of his work. This is, then, he says a permissible amount to remedy his damages. (ECF No. 37, PageID.1451). For the reasons explained above, the Court does not view the license agreements as all that useful. Applying the factors listed in *La Quinta*, the Court furthermore sees the amounts DeYoung seeks to be excessive. DeYoung's trademark claim is based on ownership of a single trademark. (*See* First. Am. Compl. ¶ 13). In seeking to recover $20,000 from each of the 19 remaining defendants, DeYoung seeks a total amount of $380,000 that is far above what is provided for in his license agreements in any event. While the factors augur in favor of some damages, they do not point so strongly to the excessive amount DeYoung seeks. After consideration of all the above factors, the Court determines in its discretion that an award of $5,000 per defendant, for a total of $95,000 is sufficient to compensate DeYoung and deter future infringement.

### 3. Permanent Injunction

In addition to monetary damages, DeYoung seeks an order enjoining and restraining Defendants from reproducing DeYoung's copyrighted works, preparing derivative works of DeYoung's copyrighted works, or from importing, displaying, selling or offering for sale any products that infringe upon DeYoung's copyrighted works under 17 U.S.C. § 502(a).  DeYoung requests a similar order with respect to his trademark.

Generally, in order to obtain a permanent injunction, a party must demonstrate: "(1) that it has suffered an irreparable injury: (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury: (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]"  *Id.*

The permanent injunctive factors all weigh in favor of granting the injunctive relief DeYoung seeks.  DeYoung has established Defendants' liability for willful copyright infringement and false designation of trademark.  In using images of DeYoung's protected works on their own ecommerce sites, Defendants are targeting U.S. consumers with counterfeit goods of poor quality, representing an ongoing injury to DeYoung's revenues and customer goodwill.  This is an irreparable injury, and monetary damages are not sufficient to compensate for that injury.  The injunctive relief requested imposes minimal hardship on Defendants.  It also serves the public interest by deterring copyright infringement.  The Court will enter the injunction proposed in Paragraphs 8 and 9 of the proposed order.  (ECF No. 35-23, PageID.1438-1439).

**4.  Fees and Costs**

DeYoung has also requested an award of attorney fees and costs in the amount of $32,747, consisting of $32,347, plus $400 in costs, under 17 U.S.C. § 505.  The Court concludes an award of attorney fees and costs in this case is appropriate because of Defendants' willfulness.  *See Coleman*, 698 F. Supp. at 709.  However, more information is needed to evaluate the proper amount of the award.

DeYoung arrives at his fee request by multiplying the 87.9 hours billed by the median hourly rate for intellectual property practitioners in the State of Michigan of $368, which is slightly above Attorney Di Giacomo's attorney standard rate of $350.00.  The Court appreciates the additional information provided by counsel in response to the Court's first order.  But upon further review determines more information is still needed to determine whether the hourly rate and number of hours incurred were reasonable.  For example, of the total 87.9 hours billed, Attorney Di Giacomo states only 10.2 hours were expended by him, with the remaining hours incurred by two other attorneys (ECF No. 35-19).  The record does not contain information on the customary rate of these two attorneys.  Moreover, the time records provided by DeYoung are redacted such that the Court cannot determine whether the number of hours incurred were reasonable.  (ECF No. 35-20).  To enable the Court to make this assessment, the Court will require DeYoung's counsel to submit a supplemental affidavit detailing the hours rate of all the attorneys contributing to the total number of hours billed and the number of hours spent (including a publicly available description of the work) on the case.

**CONCLUSION**

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff DeYoung's Application for Entry of Default Judgment (ECF No. 35) is **GRANTED** to the extent specified in this Opinion and Order.

2. Plaintiff DeYoung's Motion to Seal (ECF No. 38) is **GRANTED.**

3. Plaintiff is entitled to an award of attorney fees and costs against Defendants, jointly and severally, under 17 U.S.C. § 505.  Within fourteen (14) days from the date of this Order, Plaintiff shall submit a supplemental affidavit from counsel setting forth the hourly rate of the individuals billing in this matter and the hours spent on this matter (including a description of the work performed).  The Court will enter a final default judgment after receiving this supplemental information from counsel.


Dated:    March 29, 2021            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE